GEORGE KESSLER and MILDRED KESSLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kessler v. Commissioner
Docket No. 12903-80.
United States Tax Court
T.C. Memo 1985-254; 1985 Tax Ct. Memo LEXIS 383; 49 T.C.M. (CCH) 1565; T.C.M. (RIA) 85254; May 28, 1985. Sebastian Ragusa, for the petitioners. Vincent Barrella and Arthur J. Gonzalez, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent *384 determined a $657 deficiency in petitioners' 1977 Federal income tax. After concessions, the issues for decision are whether petitioner, George Kessler, is entitled to a deduction under section 162[1] for the following expenses claimed to have been incurred as a result of his employment with the Federal Bureau of Investigation: (1) automobile, surveillance, and informant entertainment expenses (meals and drinks); (2) purchases of practice ammunition and a gun holster; (3) contributions to a legal defense fund and an insurance fund for special agents; (4) the cost of maintaining a home telephone; (5) purchase of a wristwatch; (6) the cost of a health club membership; and (7) maintenance of clothing worn at the Camp Smith Firing Range. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, George Kessler and Mildred Kessler, husband and wife, resided in Oak Ridge, New Jersey, when they filed their petition herein. George and Mildred Kessler timely filed their joint Federal income tax return (Form 1040) for the taxable year 1977. Petitioner, Mildred Kessler, *385 is a party hereto solely by reason of her having filed a joint 1977 Federal income tax return with her husband; hereinafter all references to petitioner in the singular are to George Kessler. General Background
During the taxable year 1977, petitioner was employed fulltime as a special agent for the Federal Bureau of Investigation (hereinafter FBI) and was assigned to general investigative work. From January 10, 1977 through March 28, 1977, Kessler was detailed on special assignment in Washington, D.C. While on assignment in Washington, D.C., Kessler's travel and other business expenses were reimbursed by the FBI and are not in issue herein. After his special assignment in Washington, D.C., petitioner was reassigned to the New York office to work on a labor racketeering investigation. From August 28, 1977 through December 31, 1977, petitioner was on leave of absence from the FBI due to a broken leg sustained in a non-job related incident. Thus, petitioner spent approximately five months during the taxable year 1977 working out of the FBI's New York field office. The FBI Administrative Structure
At all relevant times, the National Office of the FBI was located in *386 Washington, D.C., and during 1977, the director of the FBI was Clarence Kelley. The FBI maintains numerous field offices which, with the exception of the New York office, are headed by Special Agents-in-Charge (hereinafter SAC). The SAC's had overall supervisory responsibility for each of their respective field offices. The New York office was headed by an Assistant Director-in-Charge (ADIC) who had several SAC's working below him. Due to the high concentration of crime, and the numerous types of criminal activity in the New York metropolitan area, each SAC was in charge of different categories of crime. Each SAC reports directly to the ADIC who, during 1977, was J. Wallace La Prade (hereinafter La Prade). La Prade was responsible directly to the Director of the FBI, Clarence Kelley. FBI's Compensation and Reimbursement Policy
Special agents of the FBI are paid a salary in accordance with the general service schedule promulgated by the Office of Personnel Management. Special agents also receive additional compensation in the form of payments for administratively uncontrollable overtime. Technically, special agents were not required as a condition of their employment *387 to incur expenses in connection with their investigative duties that would not be reimbursed. However, it was generally understood that in order to have a good performance record special agents may have to incur some unreimbursed expenses. Generally, when approved by the SAC or, in New York, the ADIC, special agents would be reimbursed for their out-of-pocket expenses and for the use of their personal automobile if for official business. In order for a special agent to receive reimbursement for out-of-pocket expenses, he had to submit a voucher. This voucher then had to be reviewed and approved by the SAC or the ADIC. If approved, the voucher would then be transmitted to the "voucher and payroll section" in the National Office for review and payment. The section chief, John H. Skaggs (hereinafter Skaggs) [2] would evaluate the voucher to verify that the claimed expenditure was properly documented, reimbursable under the National Office policy and guidelines, and was incurred in the furtherance of the FBI's mission. The determination of whether or not any expense would be reimbursed was made by *388 the SAC or, in the New York office, the ADIC; each has broad authority to run and manage his programs and expenditures. In this regard, the SAC or the ADIC had a certain degree of discretion or latitude in determining which expenditures incurred by special agents would be approved for reimbursement. It was possible that one supervisor may have been stricter than another supervisor in a different part of the country; that the supervisor could have directed a special agent to incur an expense and, then, deny reimbursement of the expense because of the confines of the investigation or the funds available. If a special agent disagreed with the SAC's or ADIC's determination, he could appeal the decision to FBI Headquarters. Under the appeal procedure in effect during the year in issue, a special agent would resubmit the voucher to the SAC or ADIC. The supervisor who rejected the special agent's claim would be required to forward the voucher, along with a memorandum explaining why he is not approving the expense, to the voucher and payroll section in Washington, D.C. Skaggs would then review the special agent's appeal in order to determine the validity of the claim. Following his review, *389 Skaggs prepared a memorandum in which he made a recommendation of the validity of the special agent's claim. The voucher, the supervisor's explanation, and Skaggs' memorandum would then be referred to the appropriate level for an ultimate decision. New York Field Office
During 1977, La Prade was the ADIC in New York and had broad authority to manage the New York office. As the ADIC, La Prade had to approve any voucher in order for a special agent to get reimbursed for expenses incurred during an investigation. La Prade determined that certain expenses incurred by special agents would not be reimbursed. Those specific situations will be discussed below. The New York field office had approximately 300 vihicles for approximately 1,300 agents. La Prade testified that it was his policy that a special agent would not be reimbursed for the personal use of his automobile unless he submitted a memorandum and obtained prior approval. Furthermore, no prior approval would be given for the use of FBI vehicles to attend required training at Camp Smith in Peekskill, New York. It was the New York field office policy that out-of-pocket expenses incurred as a result of self-initiated *390 surveillance were not reimbursable. In addition, entertainment type of expenses incurred to develop informants or maintain confidential sources would not be approved. [3] Further, it was La Prade's policy that any expenses relating to meals or drinks purchased for informants (identified or not) or officials in connection with conducting an investigation were nonreimbursable. Finally, special agents were not reimbursed for the cost of practice ammunition. Petitioner's Expenditures
During 1977, petitioner allegedly incurred, in connection with his employment, various expenses that were not reimbursed by the FBI. Petitioner maintained an "expense record" in which he recorded certain alleged expense items as one of four types: (a) "car" (type 1); (b) "surveillance & undercover" (type 2); (c) "sources & liaison" (type 3); and (d) "miscellaneous" (type 4). Petitioner's expense record contained only *391 the dates and the amounts of the alleged expenses. [4] With respect to each entry, petitioner did not enter the name of the person entertained or followed, business purpose, or the place where the expense was incurred. At trial, petitioner could not recall the identity of the person entertained or followed, the business purpose of the meeting, or the place where the expenditure was incurred. Petitioner did not file a memorandum with the FBI on each expenditure which would contain the above information. Automobile, Surveillance and Informant Entertainment Expenses
Petitioner was assigned to investigate labor racketeering in New York. In conducting investigations, petitioner used his personal automobile for the following reasons: (1) convenience; (2) to travel between his home and his place of employment; (3) when he believed a government vehicle would be more easily identified in a surveillance situation; and (4) for self-initiated surveillance. [5] Petitioner also drove his personal automobile to Camp Smith in Peekskill, New York. Petitioner believed that under New York field office *392 policy his vouchers would not be approved by La Prade and therefore he did not seek reimbursement. Expenses petitioner claimed for informants relate only to unidentified informants or confidential sources. Petitioner believed that it was part of his job to develop confidential sources and informants. In this regard, petitioner incurred entertainment type expenses such as meals and drinks to develop new sources of information and maintain existing ones. Petitioner's out-of-pocket surveillance expenses relate mainly to meals and drinks he incurred during self-initiated surveillance after working hours. Because it was La Prade's policy that such expenses were not reimbursable, petitioner did not submit a voucher for any of the alleged expenditures. Other Expenses
In addition to surveillance, informant and automobile expenses, petitioner is claiming deductions for the following six items: The cost of practice ammunition and a gun holster; contributions to a special agent's insurance fund and to a legal defense fund; telephone expense; purchase of a wristwatch; *393 membership at a health club; and the cost of cleaning his range and field uniforms. It is undisputed that, with the exception of the cost of ammunition purchased for target practice, all of the above-mentioned expenses were unreimbursable. Petitioner claims a deduction for the cost of ammunition and a gun holster. FBI agents were issued a standard revolver which was a .38 caliber Smith and Wesson, and a holster. The FBI permitted special agents to purchase their own weapons and/or special holsters, but such purchases were not reimbursed by the FBI. Petitioner was required to practice regularly with his weapon. When engaging in target practice, special agents shoot a special type of practice bullet known as a "wadcutter." Apparently, wadcutters were available to FBI agents through their firearm instructors. If wadcutters were not available, personal purchases of the practice type bullet would be reimbursable under National Office policy if the proper vouching procedures were followed. Petitioner did not seek reimbursement for the cost of the wadcutters or the gun holster that he claims to have purchased. During 1977, petitioner made a $40 contribution to the special agents *394 insurance fund (hereinafter insurance fund). The insurance fund was established to provide immediate benefits to the next of kin of deceased special agents. Benefits from the insurance were generally available to families of all special agents whether or not the particular agent had contributed to the fund. Petitioner also contributed $25 to the legal defense fund. The defense fund was established to assist special agents with legal expenses arising from charges of wrongful conduct, either civil or criminal in nature, committed while conducting FBI investigations. [6]
With respect to the telephone expense, petitioner is seeking a deduction for the entire basic service charge for his home phone. Petitioner's total bill for 1977 was $426 of which $160 represented the basic service charge. Although petitioner was required to be accessible by the FBI 24 *395 hours a day, the FBI did not require that special agents have a telephone in their home. The FBI would reimburse a special agent for all long distance toll business calls made from his home telephone. Petitioner had maintained a telephone at his current residence since 1962, or approximately 6 years prior to his joining the FBI. Petitioner's home telephone was used by petitioner and his family primarily for personal purposes. Petitioner did not keep any records of purported business calls made during 1977 from his home telephone. During 1977 petitioner purchased a Seiko men's wristwatch at a cost of $211. This wristwatch was worn by petitioner while at work and at home. He was not required as a condition of employment to own or wear a wristwatch. Petitioner was required to keep in good physical shape. In this regard, petitioner joined a Young Men's Hebrew Association (YMHA). At trial, petitioner claimed a business deduction in the amount of $65 which purportedly represents the cost of membership in the YMHA. The FBI did grant special agents administrative time off to engage in physical activity in order to maintain top physical condition. In addition, petitioner was required *396 to periodically attend training camp at Camp Smith in Peekskill, New York. Petitioner claims the deduction for the cost of cleaning his range and field uniform worn at Camp Smith. While at camp, petitioner was required to wear a gray shirt, gray pants, boots and a cap. The clothing did not bear any name or other designation which identified petitioner as an employee of the FBI. The clothing was adaptable for general usage and wear, but petitioner did not wear the clothes outside the military base. On his 1977 Federal income tax return, petitioner claimed a deduction under section 162 for the aforementioned expenses. In the statutory notice of deficiency, respondent disallowed the total amount of petitioner's claimed deductions. The following chart identifies the item in issue, the amount of expense petitioner claimed on his return, and the amount of expense petitioner claimed at trial: Claimed Per
Claimed At
Item
Return
Trial
Automobile expense
$579.00
$563.25
Dues and subscriptions:
165.00
Legal defense fund
25.00
Insurance fund
40.00
Telephone
160.00
160.00
Firearms and accessories:
260.00
Watch
211.00
Ammunition
60.00
Holster
21.00
Field and range uniforms
40.00
40.00
Surveillance expense
300.00
345.00
Informant expense
350.00
377.00
Physical fitness
50.00
65.00
*397 OPINION We must determine whether petitioner is entitled to a deduction for various out-of-pocket expenses incurred in the course of his employment with the FBI. Generally, section 162 provides a deduction for all ordinary and necessary expenses incurred in carrying on a trade or business. Although there is no requirement that there must be an underlying legal obligation to make the expenditure, the taxpayer must establish that the expenditure was ordinary and appropriate in the conduct of the taxpayer business. Waring Products Corp. v. Commissioner,27 T.C. 921, 929 (1957); see also Schmidlapp v. Commissioner,96 F.2d 680, 681-682 (2d Cir. 1938) (A bank officer permitted a deduction for entertainment expenses when his employer "expected that as part of [the taxpayer's] duties he would entertain at his own expense visitors whose favor the bank desired."). Petitioner bears the burden of proving that the expenses in question were actually incurred for the purposes claimed, and that they are not personal expenses but business expenses. Rule 142, Tax *398 Court Rules of Practice and Procedure; section 1.162-17(d), Income Tax Regs.; Moss v. Commissioner,80 T.C. 1073, 1078 (1983), affd. 758 F.2d 211 (7th Cir. 1985). To the extent that petitioner was entitled to reimbursement for the claimed expenses, no deduction is allowed oven if reimbursement was not sought. Brown v. Commissioner,446 F.2d 926, 929, n. 5 (8th Cir. 1971); Heidt v. Commissioner,274 F.2d 25, 28 (7th Cir. 1959); Lucas v. Commissioner,79 T.C. 1 (1982); Podems v. Commissioner,24 T.C. 21, 23 (1955). In the instant case, in order to obtain reimbursement for any expense, the special agent's voucher had to be approved by the ADIC, La Prade. In this regard, La Prade determined whether a special agent would receive reimbursement for any specific expense. La Prade also established a policy whereby special agents in the New York office would not be reimbursed for certain categories of out-of-pocket expenditures. Although special agents in New York could have formally appealed La Prade's decisions concerning reimbursement policies, the record *399 before us indicates such action would be impractical. ADIC La Prade had broad authority to manage his programs, investigations, and expenses. In fact, La Prade could direct a special agent to incur an expense and then deny reimbursement because of the confines of the investigation or the funds available. Accordingly, under the circumstances here present, an expense that would otherwise be deductible under section 162 will not be rendered nondeductible because petitioner did not appeal ADIC La Prade's determination. [7]
In addition to establishing that his claimed expenses were nonreimbursable, in order to deduct expenses for travel or entertainment, petitioner must meet the strict substantiation requirements of section 274(d). Section 274(d) requires that the taxpayer substantiate by adequate records or sufficient evidence corroborating his own testimony for each deducted item: (1) the amount; (2) the time and place of the travel or entertainment; (3) the business purpose of the expense; and (4) the relationship *400 between the taxpayer and the person entertained. It is well settled that section 274 supersedes the Cohan rule; [8] thus no deduction shall be allowed based on the unsupported testimony of the taxpayer. Section 1.274-5(a), Income Tax Regs.; S. Rept. No. 1881, 87th Cong., 2d Sess., reprinted in 1962-3 C.B. 707, 877. Keeping these general rules in mind, we will now discuss each of petitioner's claimed deductions separately. Issue 1. Automobile, Surveillance and Informant Entertainment Expenses
a. Automobile Expenses
Petitioner argues that his personal automobile was used in connection with FBI investigations. On the other hand, respondent maintains alternatively that petitioner could have been reimbursed for his expenses, that petitioner's use of his personal automobile was for his personal convenience, and that petitioner has failed to substantiate the claimed expenses. The first hurdle petitioner must overcome is the availability of employer reimbursement for his purported expenses. Generally, if approved by his supervisor a special agent *401 would be reimbursed for the use of his personal automobile when utilized for official business. In the New York field office, the reimbursement policy was that personal use of a special agent's automobile was nonreimbursable unless prior authorization was obtained and that no prior authorization would be given for self-initiated surveillance. Thus, to the extent that petitioner's automobile expense relates to self-initiated surveillance, he may be entitled to a deduction under section 162 provided that he can substantiate the expense and establish that it was in furtherance of FBI business. Although local automobile transportation expenses do not come within the purview of section 274(d), petitioner is nonetheless required to keep records sufficient to enable the Commissioner to correctly determine the income tax liability. Sec. 1.162-17(d)(2), Income Tax Regs.
In support of his claimed deduction, petitioner points to his expense record which indicates the day, the miles traveled, and the amount of tolls and parking fees paid. At trial, petitioner asserts *402 that these expenses were incurred by him when driving his personal automobile in the course of his official duties while assigned to the New York office.In total, petitioner's expense record indicates 3,275 miles traveled and $6.50 for tolls and parking fees. Among the reasons suggested by petitioner at trial for using his personal automobile, were: (a) for his personal convenience; (b) to travel between his home and place of employment; and (c) for self-initiated surveillance activities. It hardly needs citation of authority that a taxpayer's use of his personal automobile for his personal convenience or to travel between his home and his place of employment is a nondeductible personal expense. Sec. 1.262-1(b)(5), Income Tax Regs. Although petitioner might be entitled to deduct his automobile expenses incurred while conducting self-initiated surveillance, petitioner has offered no evidence which distinguishes the times his personal automobile was used for this purpose. Moreover, at trial petitioner indicated that sometimes the surveillance activity was conducted *403 on his way home, and it simply was more convenient to use his personal automobile rather than a government vehicle. Obviously in such cases the use of his personal automobile would not be deductible. We hold, therefore, that petitioner has failed to substantiate a deduction for these expenses. Petitioner's expense record does, however, identify approximately four trips each in the amount of 120 miles as relating to firearms. At trial, petitioner testified that he was required to use his personal automobile to travel to Camp Smith for firearms training and that he was not entitled to reimbursement for such use. [9] Clearly petitioner's expenses incurred in traveling to Camp Smith are deductible under section 162. [10] Accordingly, we find that this was bona fide business mileage driven by petitioner and, therefore, he can deduct his expenses relating to these four trips. b. Surveillance Expense
*404 Petitioner argues that during 1977 he incurred out-of-pocket expenses for such items as meals and drinks purportedly purchased by him while conducting surveillance activities. On the other hand, respondent argues that even assuming these expenses are nonreimbursable, petitioner has failed to substantiate them and is not entitled to any deduction. We agree with respondent. We do not necessarily doubt that petitioner in doing his job as a special agent for the FBI did occasionally have to engage in nonassigned, after hour surveillance activity. However, petitioner's surveillance expenses relate to meals and drinks incurred by him while following a suspect. Such expenses incurred while traveling locally are inherently personal in nature and ordinarly are nondeductible. United States v. Correll,389 U.S. 299, 303-304 (1967); Moss v. Commissioner,supra at 1077; Fife v. Commissioner,73 T.C. 621, 624 (1980). In order for such expenses to qualify under section 162, the taxpayer must demonstrate that they were "different from or in *405 excess of that which would have been made for the taxpayer's personal purposes." Moss V. Commissioner,supra at 1077, citing Sutter v. Commissioner,21 T.C. 170, 173 (1953). In the instant case, petitioner has failed to establish that these expenses exceeded the expenditures he would have made in any event for his personal purposes, and, therefore, such expenses are nondeductible. Moreover, even were we to assume that these expenses are deductible under section 162, petitioner has failed to meet the substantiation requirements of section 274(d). Petitioner's expense record only indicates the types of expenses and the amounts. At trial, petitioner shed little additional light on the nature or purpose of the expenses, the place of the expenses, or who was being followed. Indeed, petitioner's testimony concerning his surveillance expenses was vague, general, and replete with self-serving conclusions. See Stolk v. Commissioner,40 T.C. 345, 357 (1963), affd. per curiam 326 F.2d 760 (2d Cir. 1964). Petitioner argues that such records could not be kept because the information was confidential. [11] We note, however, *406 that section 1.274-5(c)(2)(ii)(c), Income Tax Regs., specificially addresses situations where information is confidential. Section 1.274-5(c)(2)(ii)(c), Income Tax Regs., provides: If any information relating to the elements of an expenditure, such as place, business purpose or business relationship, is of a confidential nature, such information need not be set forth in the account book, diary, statement of expense or similar record, provided such information is recorded at or near the time of the expenditure and is elsewhere available to the district director to substantiate such element of the expenditure. Petitioner made absolutely no attempt to comply with this regulation. [12] The best petitioner *407 could do was to speculate that there might be "memos" somewhere within the FBI records. However, petitioner acknowledges that he did not prepare a "memo" with respect to each item and that those "memos," if prepared, may not have set forth the required information. Accordingly, even assuming that the claimed expenses were otherwise deductible, section 274 clearly precludes any tax deduction for petitioner. c. Informant Entertainment Expenses
Petitioner argues that during 1977 he incurred $377 in entertainment type expenditures such as the cost of meals and drinks, to develop new sources of information and to maintain confidential sources. Although these expenses were not reimbursable under the policy of the New York office, petitioner has again failed to substantiate them. [13] As we stated earlier, to be deductible entertainment expenses must meet the strict substantiation requirements of section 274(d). At trial, petitioner did not provide any receipts or records other than what was contained in the expense record. The expense record only indicated the date and amount of the *408 expense. Petitioner was unable to establish the nature or purpose of the expenses, the place of the expenses, or who was being entertained. In short, as in the case of his surveillance expenses, petitioner's expense record is wholly inadequate, and his testimony was vague, general, and replete with self-serving conclusions. Accordingly, for the same reasons set forth in our discussion concerning substantiation of his surveillance expenses, petitioner is not entitled to a deduction for expenses relating to entertainment of informants. Issue 2. Purchase of Ammunition and a Holster
Petitioner asserts that he is entitled to a deduction in the amount of $60 for the purchase of "wadcutters" that were used for target practice.On the other hand, respondent maintains that petitioner has failed to prove that the wadcutters which were usually made available from the firearms instructor, were actually purchased and that reimbursement for such purchases was not possible. For reasons set forth below, we agree with respondent. In *409 support of his position that he purchased the ammunition required for target practice, petitioner points once again to his expense record. The expense record generally indicates amounts with the word "ammo" written underneath them. At trial, petitioner testified that wadcutters were available from the firearms office at Camp Smith. To the extent that wadcutters were available during the practice sessions, it is axiomatic that no deduction is allowable. Although the record is somewhat ambiguous, it appears that petitioner could have received wadcutters for the asking. In order to deduct the cost of ammunition, petitioner must establish that it was unavailable to him and that, if purchased, the cost was unreimbursable. Petitioner has failed to do so and, accordingly, we must hold for respondent on this issue. Rule 142(a), Tax Court Rules of Practice and Procedure. See, e.g., Podems v. Commissioner,24 T.C. 21 (1955). With respect to petitioner's claimed deduction for the cost of a holster purchased by him in 1977, we must also hold for respondent. Petitioner offered no evidence beyond his self-serving statements to establish that a holster was in fact purchased. *410 We need not accept petitioner's self-serving statements as fact. Schoenberg v. Commissioner,302 F.2d 416 (8th Cir. 1962). Furthermore, petitioner produced no evidence whatsoever to establish the amount of the alleged purchase and we will not simply guess. Accordingly, we must hold that petitioner has failed to carry his burden of proof on this issue as well. Rule 142(a), Tax Court Rules of Practice and Procedure.
Issue 3. Contributions to Legal Defense Fund and Insurance Fund
Petitioner argues that he is entitled to deduct as an employee business expense contributions made to the insurance fund and the legal defense fund. On the other hand, respondent maintains that these were voluntary contributions and not deductible business expenses. It is undisputed that petitioner's contributions to both the special agent's insurance fund and the legal defense fund were voluntary in nature. It is also undisputed that the benefits of both funds were generally available to all special agents whether or not they had previously contributed to the funds. The special agent's insurance fund was established to provide benefits to the next-of-kin of a deceased *411 special agent.These benefits were generally available to all families whether or not a particular special agent contributed to the fund. From the record before us, we believe that the insurance fund was in substance the equivalent of life insurance. It is well settled law that life insurance premiums are a nondeductible personal expense. Sec. 1.262-1(b)(1), Income Tax Regs. Accordingly, petitioner can get no deduction for his contributions to this fund. The legal defense fund was established to aid the defense of special agents who had been charged with committing wrongful conduct, either civil or criminal in nature, while conducting their investigative activities. Whether petitioner's contributions are deductible as business expenses must be determined under section 1.162-15(b), Income Tax Regs., which provides: Donations to organizations other than those described in section 170 which bear a direct relationship to the taxpayer's business *412 and are made with a reasonable expectation of financial return commensurate with the amount of the donation may constitute allowable deductions as business expenses * * *. This regulation sets forth a two prong test. The first part is that the donation must bear a direct relationship to the taxpayer's business. In the instant case, we believe that the legal defense fund bore a direct relationship to petitioner's business.Although it was originally organized to aid those special agents involved in a specific situation, the fund remained a permanent structure which assisted any special agent confronted with legal expenses which arose out of his employment with the FBI. [14] The second part of the test under the regulations is that the donation must be made with a reasonable expectation of financial return. The legal defense fund was only available to employees of the FBI and, if an employee became involved in litigation, the legal defense fund would defray an agent's litigation expenses which could be substantial. We believe that petitioner's contributions to the fund were made with a reasonable expectation of a financial return. See Smith v. Commissioner,3 T.C. 696 (1944). *413 Accordingly, we hold that petitioner has met both requirements of section 1.162-15(b), Income Tax Regs., and is entitled to a deduction in the amount of $25. Issue 4. Cost of Maintaining Home Telephone
Petitioner argues that he is entitled to a deduction in the amount of $160 which represents the total basic service charge for maintaining a telephone in petitioner's home during 1977. On the contrary, respondent maintains that petitioner's primary reason for having the telephone in his home was personal rather than business. Respondent further argues that incidental business use of a home telephone maintained primarily for the taxpayer's personal use without additional cost should not force the Government to share the cost of the basic service charge. For *414 the reasons set forth below, we agree with respondent. Petitioner's telephone was installed and maintained in petitioner's residence for a period of six years prior to joining the FBI. The telephone was maintained and used primarily for personal purposes by petitioner and other members of his family. During 1977, petitioner was entitled to be reimbursed for any toll calls made from his home telephone which related to FBI business. Thus, any additional telephone expenses incurred by petitioner from business calls were fully reimbursable and therefore nondeductible. Herein petitioner is seeking a deduction for the whole basic service charge during 1977. It is undisputed that this charge remains the same regardless of the use and the number of telephone calls made. In Roth v. Commissioner,17 T.C. 1450 (1952), we permitted a taxpayer a deduction for the installation and maintenance charges of a home telephone. In Roth we stated: "It is indicated from the testimony that the only reason impelling petitioner to install this telephone was for the purpose of receiving calls for the performance of service by him. There is no evidence that the telephone was *415 used for personal convenience of petitioner or his family." [Emphasis added, 17 T.C. 1455.] The rationale underlying the Roth decision was that the taxpayer bore an additional cost which was directly attributable to his employment. In the instant case, petitioner's home telephone was maintained primarily for his personal purposes, and he incurred no additional cost because of any incidental business use. It is well settled law that section 262 takes precedence over section 162. Sharon v. Commissioner,66 T.C. 515, 522-523 (1976), affd. 591 F.2d 1273 (9th Cir. 1978), cert. denied 442 U.S. 941 (1979). Ordinarily, maintenance of a telephone in one's home is an inherently personal expense and petitioner must make a clear showing that the acquisition and maintenance of the phone at his residence was not primarily personal in order to be entitled to a deduction. See Moss v. Commissioner,80 T.C. 1073, 1078 (1983), affd. 758 F.2d 211 (7th Cir. 1985). Therefore it follows that incidental business *416 use of a home telephone, without additional cost, should not convert an otherwise personal expense into a business expense to be shared by the Government. See Moss v. Commissioner,supra at 1080. Petitioner's home telephone was maintained principally for personal purposes; any business use was incidental and did not result in additional cost to him. Accordingly, we hold that petitioner cannot deduct any portion of his home monthly service charge. [15]
Issue 6. Wristwatch
Petitioner claims a deduction for the cost of a wristwatch purchased during 1977. In support of his position, petitioner has relied on cases unrelated to this issue, or involving the repair of a wristwatch. [16] We have considered these cases and find them distinguishable and unpersuasive. *417 We do not deny that petitioner, like many other professionals, must have a knowledge of the correct time of day. However, this does not convert an expense which is inherently personal in nature into a business expense. As we stated earlier, section 262 takes precedence over section 162 and operates to exclude items that are required by an employer but are nonetheless inherently personal in nature. A wristwatch is virtually part of every employee's wardrobe, particularly that of a professional. Petitioner's watch is no different than his suit, his tie, or his shoes. Accordingly, we hold that the cost of petitioner's watch is a nondeductible personal expense. Issue 7. The Cost Of A Health Club Membership
On his 1977 tax return, petitioner claimed an expense labeled "physical fitness." Petitioner argues that this expense represents the cost of his membership in the YMHA during 1977; it is further asserted by petitioner that this expense was incurred in part to improve his defense tactics. On the other hand, respondent maintains that this was not an ordinary and necessary business expense, but rather fits squarely within the provisions of section 262. Respondent also *418 contends that petitioner did not establish the existence or the amount of this claimed expense. Petitioner offered us little or no evidence in support of the claimed expense. Petitioner testified that he was a member of the YMHA and when asked why, he responded "just to exercise and keep myself in half-way decent physical shape, and to kinda practice defense tactics, which we have at firearms." Petitioner offered no evidence to establish the cost of self-defense instruction or the cost of the membership. On his 1977 income tax return, petitioner claimed $50 as physical fitness expenses. Prior to trial, petitioner increased the amount claimed to $65. Again, we must hold that petitioner has failed to substantiate this deduction and is allowed nothing. [17]Rule 142(a), Tax Court Rules of Practice and Procedure
*419 Issue 8. Maintenance of Clothing Worn at Training Camp
Petitioner argues that the cost of cleaning range and field uniforms worn at the FBI firing range at Camp Smith, New York, are deductible business expenses. The clothing consisted of a cap, gray shirt, gray pants, and boots that could be worn without restriction off the military base. They bore no name or insigna of the FBI and in no way revealed the nature of petitioner's employment. All the clothing was adaptable for general usage and wear although petitioner did not wear the "grays" for recreation. The general rule used to determine the deductability of clothing used in a trade or business is that if they are suitable for general use, the deduction is not allowed. Donnelly v. Commissioner,262 F.2d 411 (2d Cir. 1959), affg. 28 T.C. 1278 (1957). In Donnelly, the court set out three criteria which must be met before deduction for clothing is allowed: (1) the clothing is of a type specifically required as a condition of employment; (2) it is not adaptable to general usage as ordinary *420 clothing, and (3) it is not so worn. Even accepting petitioner's testimony at face value, he only satisfies the first and third requirements. Petitioner has admitted that the clothing which does not have a FBI insignia is suitable for general use. Although petitioner claimed he did not wear it while at home, this is irrelevant. Accordingly, we must hold for respondent on this issue. To reflect the foregoing and concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. John H. Skaggs has headed the voucher and payroll section since April 1977.↩
3. There are two general categories of informants (1) identified, who are those of record in FBI files; and (2) unidentified, who are not of record. In addition, special agents are expected to develop their own confidential sources whose identities are not disclosed to the FBI.↩
4. For automobile expenses, the date, mileage, tolls, and parking fees were logged.↩
5. Self-initiated surveillance refers to surveillance activities undertaken by special agents after working hours.↩
6. The defense fund was initially established to raise money to defray the legal expenses incurred by the special agents involved in the "Weatherman" case. Subsequent to that case, the fund remained a permanent structure available to any special agent who incurred legal expenses arising out of his employment with the FBI.↩
7. See Neal v. Commissioner,T.C. Memo. 1981-172↩.
8. See Cohan v. Commissioner,39 F.2d 540↩ (2d Cir. 1930).
9. Moreover, La Prade testified unequivocally that special agents could not use FBI vehicles for traveling to Camp Smith and that they would not be reimbursed for the use of their personal automobile.↩
10. See Gudmundsson v. Commissioner,T.C. Memo. 1978-299↩.
11. Petitioner has not established to the Court's satisfaction that such information was in fact confidential. The only evidence petitioner presented that such information was "confidential" and could not be disclosed was his own self-serving testimony. In effect, petitioner is attempting to hoist himself up by his own bootstraps.↩
12. Moreover, petitioner gave no explanation why this regulation could not be followed.↩
13. We assume, without deciding, that petitioner's informant entertainment expenses would be deductible under section 162↩ if properly substantiated.
14. Legal expenses incurred by special agents in defending against charges brought as a result of their employment with the FBI would be deductible if the amounts are ordinary and necessary under the circumstances. See Commissioner v. Tellier,383 U.S. 687 (1966), affg. 342 F.2d 690↩ (2d Cir. 1965), which had reversed a Memorandum Opinion of this Court.
15. Compare, Hamilton v. Commissioner,T.C. Memo. 1979-186; Marzano v. Commissioner,T.C. Memo. 1970-159 with Gower v. Commissioner,T.C. Memo. 1982-72; and Banks v. Commissioner,T.C. Memo. 1981-490↩.
16. Petitioner relies on Russell v. Commissioner, a Memorandum Opinion of this Court dated April 7, 1952; and Ward v. Commissioner, a Memorandum Opinion of this Court dated April 7, 1952. In Russell the respondent conceded that taxpayer was entitled to deduct watch repairs. However, later cases have held that the cost of repairing a watch used at work is a nondeductible personal expense. See Patterson v. Commissioner,T.C. Memo. 1971-234; Feinstein v. Commissioner,T.C. Memo. 1970-288↩.
17. Because we have held that petitioner has failed to substantiate his physical conditioning expenses, we need not decide whether, if substantiated, such expenses would be deductible under section 162. See Stemkowski v. Commissioner,690 F.2d 40, 46 (2d Cir. 1982), revg. on this issue 76 T.C. 252 (1981); and Stemkowski v. Commissioner,82 T.C. 854, 868↩ (1984).